MAINE SUPREME JUDICIAL COURT                      Reporter of Decisions
Decision:     2019 ME 94
Docket:       Cum-18-515
Submitted
  On Briefs:  May 30, 2019
Decided:      June 11, 2019

Panel:        SAUFLEY, C.J., and ALEXANDER, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

IN RE CHILD OF RAUL R.


PER CURIAM

[¶1]  Raul R. and Jessie H. appeal from a judgment of the District Court (Portland, *Eggert, J.*) terminating their parental rights to their child.  Both parents challenge the court's parental unfitness determinations and contend that the Department of Health and Human Services failed to meet its obligation to provide reunification services pursuant to 22 M.R.S. § 4041(1-A) (2018). The mother additionally argues that her due process rights were violated when the court commenced the termination hearing—as previously scheduled—in her absence and with the knowledge that she had been arrested while travelling to the hearing.  We affirm the judgment.

[¶2]  Based on competent evidence in the record, the court found by clear and convincing evidence that both parents (1) are unable to protect the child from jeopardy and these circumstances are unlikely to change within a time that is reasonably calculated to meet the child's needs, (2) are unable to take

responsibility for the child within a time that is reasonably calculated to meet the child's needs, and (3) failed to make good faith efforts to rehabilitate and reunify with the child. *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii), (iv) (2018). The court also determined that termination of the parents' parental rights is in the child's best interest. *See id.* § 4055(1)(B)(2)(a) (2018).

[¶3]   The court found the following facts by clear and convincing evidence, all of which are supported by competent record evidence. *See In re Child of Adam E.*, 2018 ME 157, ¶ 2, 197 A.3d 527.

> At the time this case began on August 31, 2016, [the child] was 3 ½ years old.  He . . . [was] living in a household scarred by domestic violence.  At the time [the child's] mother was unable to protect him from the violence occurring in the home.  [The child's] father was the perpetrator of the violence which was severe. . . .
>
> Mother had filed for a Protection from Abuse Order earlier in 2016, but had later dismissed the action.  Police also became involved and felony domestic violence charges were brought against [the] father.  Neither of these actions were successful in stopping the violence as father violated his bail conditions and returned to the home where the violence continued.  [The child] was protected from the violence only when he was removed from the home and placed with his maternal grandparents.
>
> . . . For sentencing [the father] . . . had a choice of a suspended sentence with nine months in jail and probation, or serving a straight sentence in the Department of Corrections custody of three years.  He chose the three[-]year sentence which has resulted in him being in prison for all or most of the time that [the child] has been in Department custody and will keep him in prison until July 22, 2019.  He has had no contact with [the child] during this

time. He was also not always residing with [the] mother and [child] during the time from [the child's] birth until his placement in Department custody and therefore has not been a consistent presence in [the child's] life. At the time of the father's release from prison, [the child] will be over six years old, and if this case were still proceeding, it would be almost three years old. . . .

[¶4] The court also found that the mother has untreated mental health issues that have significantly affected her ability to meaningfully engage in visits, meetings with the Department, and evaluations for various programs. Her behavior, as well as her lack of attendance, resulted in her visitation with the child being suspended in December 2017; visitation was never reestablished.[1] The mother engaged in mental health counseling for a few months, but she was discharged by the counselor for missing seven sessions. When the Department tried to help her reengage in mental health counseling, she refused to see a counselor chosen by the Department and stated that she did not need counseling. The mother's own efforts to get into counseling have also been unsuccessful. The mother's behavior further affected her rehabilitation and reunification efforts after she tested positive for drugs in

---

[1] The court found that "[a]t Family Team Meetings[, the] mother would often lose control and yell and curse at others such that the meetings would end. The same behavior was also present at supervised visits with [the child] to the extent that visits were suspended in December 2017 and have never been reestablished." The evidence also shows that the visits were canceled because the mother missed three visits, and due to the occurrence of a "serious incident" at the last visit.

4

2017,[2] and was required by the Department to complete substance abuse treatment. Although the Department made referrals and the mother started various programs, her behavior caused her to be discharged before she was able to complete any of the them.

[¶5] In March 2018, the mother started—but did not complete—a court ordered diagnostic evaluation. The psychologist was unable to perform the psychometric portion of the testing due to the mother's "emotional dysregulation."

[¶6] Based on the foregoing, the court ultimately concluded,

The hoped[-]for partnership [between the mother and the Department] was not successful because of mother's inability to regulate her emotions and to reasonably discuss and plan for the programs she needed to complete. The Department tried to arrange the programs but mother failed to follow through to become enrolled, or failed to be admitted by the programs because of her own behavior. . . .

After [approximately] twenty[-]seven months that this case has been open, [the] mother has not completed any of her mental health counseling, parenting education, or substance abuse counseling. She has not had a Department sanctioned visit with [the child] in almost a year . . . . Mother herself describes her residence as "here, there, and everywhere" which certainly does not describe a situation where one can safely house a child. . . .

---

[2] A drug screen was ordered after a Department caseworker suspected that the mother might be using drugs, which came back positive for marijuana, cocaine, benzoylecgonine, amphetamines, methamphetamines, and alcohol.

> [The child] is presently living with [foster] parents . . . . After improving and doing well in the home of his grandparents, he continues to make great strides in his development in his new home. . . . He is fitting into the [foster] parents['] household well and they are willing to adopt him. The [c]ourt finds that it is in his best interest[] that the parental rights of his parents be terminated at this time.

> The Guardian *ad litem* also recommends that the parents' rights be terminated at this time so that [the child] can be free to be adopted.

[¶7]  Reviewed for clear error, the record contains competent evidence to support the court's findings, by clear and convincing evidence, of both parents' parental unfitness. *See In re Henry B.*, 2017 ME 72, ¶ 18, 159 A.3d 824.

[¶8]  The parents also contend that the court's findings as to parental unfitness are unsupported by the record because the Department failed to provide services outlined in the reunification plans. *See* 22 M.R.S. § 4041. Contrary to the parents' contentions, the evidence in the record shows that the Department did provide services, but the parents did not sufficiently participate in the counseling and rehabilitation services they were offered. Moreover, even if we were to accept the parents' contentions that the Department failed to provide services, that failure would be "merely a factor in the unfitness analysis and does not preclude termination of parental rights." *In re Children of Jessica D.*, 2019 ME 70, ¶ 6, ---A.3d ---.  Because the court's

6

findings of parental unfitness are supported by ample record evidence, the court did not err.

[¶9] Finally, the mother contends that the court violated her due process rights by denying her motion to continue and then commencing the termination hearing—as previously scheduled—in her absence, with the knowledge that she had been arrested. U.S. Const. amend. XIV, § 1; Me. Const. art. I, § 6-A. "We review a court's decision to deny a motion to continue for abuse of discretion. When due process is implicated, we review such a procedural ruling to determine whether the process struck a balance between competing concerns that was fundamentally fair." *In re Arturo G.*, 2017 ME 228, ¶ 14, 175 A.3d 91 (citation omitted).

[¶10] "In termination cases, where fundamental interests are at stake, due process requires: notice of the issues, an opportunity to be heard, the right to introduce evidence and present witnesses, the right to respond to claims and evidence, and an impartial fact-finder." *In re Child of James R.*, 2018 ME 50, ¶ 17, 182 A.3d 1252. Due process, however, "does not require that a parent be physically present at the termination hearing, as long as notice of the hearing was given in a manner calculated to give actual notice and the parent had an

*opportunity* to be heard." *In re Child of Tanya C.*, 2018 ME 153, ¶ 10, 198 A.3d 777.

[¶11] "When incarceration is not involved and a parent fails to appear, courts generally discern no abuse of discretion or violation of due process in proceeding with the hearing if the parent's absence was occasioned by circumstances voluntarily created by that parent." *In re A.M.*, 2012 ME 118, ¶ 19, 55 A.3d 463. When, on the other hand, "a parent is known to be incarcerated in advance of a hearing, the court must, upon request by the parent, provide a meaningful opportunity for the parent to participate in the hearing whether in person, by telephone or video, through deposition, or by other means that will reasonably ensure an opportunity for the parent to be meaningfully involved in the hearing." *Id*. ¶ 20.

[¶12] The mother in this matter was arrested on her way to the hearing, and thus missed the first day of the hearing, but was present for the second day. She contends that because she was deprived of her "right to respond to claims and evidence" on the first day of the hearing, her due process rights were violated.

[¶13] Although the mother contends that she was personally unable to respond to claims and evidence on the first day, "she had the opportunity—

through her attorney—to respond to claims and evidence." *In re Child of Danielle F.*, 2019 ME 65, ¶ 6, --- A.3d ---. Further, the mother could have, either in her testimony on the second day or in an offer of proof, explained how her participation on the first day of the hearing "would have affected the court's determinations that [s]he was parentally unfit," *In re Kaylianna C.*, 2017 ME 135, ¶ 11, 166 A.3d 976, but she failed to do so. Lastly, the mother did not seek to present additional evidence during or after the hearing. *See In re A.M.*, 2012 ME 118, ¶ 23, 55 A.3d 463. Therefore, the mother failed to show that she was prejudiced by her partial absence. The court did not abuse its discretion in denying the mother's motion to continue, and the mother was not deprived of due process when the court commenced the hearing in her absence. *See In re Randy Scott B.*, 511 A.2d 450, 453-54 (Me. 1986).

The entry is:

Judgment affirmed.

Angela M. Thibodeau, Esq., Holmes Legal Group, LLC, Wells, for appellant father

Molly Butler Bailey, Esq., Strike, Gonzales & Butler Bailey, Portland, for appellant mother

Aaron M. Frey, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee State of Maine

Portland District Court docket number PC-2016-73
FOR CLERK REFERENCE ONLY