# IN THE SUPREME COURT, STATE OF WYOMING

## 2021 WY 56

**APRIL TERM, A.D. 2021**

**April 27, 2021**

IN THE MATTER OF THE
TERMINATION OF PARENTAL
RIGHTS TO: TJH, minor child,

CHRISTINE DAWN HERDEN,

Appellant
(Respondent),

v.

STATE OF WYOMING, ex rel.
DEPARTMENT OF FAMILY
SERVICES,

Appellee
(Petitioner).

S-20-0180

*Appeal from the District Court of Natrona County*
The Honorable Daniel L. Forgey, Judge

*Representing Appellant:*
> Timothy C. Cotton, CottonLegal, Casper, Wyoming.

*Representing Appellee:*
> Bridget Hill, Wyoming Attorney General; Misha Westby, Deputy Attorney General; Jill E. Kucera, Senior Assistant Attorney General; Allison E. Connell, Assistant Attorney General. Argument by Ms. Connell.

*Guardian ad Litem:*
> Joseph R. Belcher, Director & Chief Trial & Appellate Counsel, and Kimberly A. Skoutary-Johnson, Wyoming Guardian *ad Litem* Program. No argument.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

*KAUTZ, J., delivers the opinion of the Court; DAVIS, C.J., files a specially concurring opinion, in which FOX, J., joins.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]     The Wyoming Department of Family Services (DFS) filed a petition to terminate Christine (Cristy) Dawn Herden's (Mother) parental rights to TJH (Child).  Because Mother failed to timely respond, the clerk of the district court entered default against her.  After a default hearing, the district court terminated her parental rights.  Mother claims the district court violated her right to due process by holding the default hearing by video conference and by refusing to allow her to present evidence on the best interests of Child.  We affirm.

## ISSUES

[¶2]     The issues on appeal are:

1.  Did the district court violate Mother's due process rights when it held the evidentiary default hearing in the parental rights termination action by video conference?

2.  Did the district court violate Mother's due process rights when it refused to allow her to present evidence regarding Child's best interests during the default hearing?

## FACTS

[¶3]     On November 18, 2019, the State filed a petition to terminate Mother's and the unknown father's parental rights to Child.[1]  The State asserted Mother's parental rights should be terminated under Wyo. Stat. Ann. § 14-2-309(a)(iii) and (v) (LexisNexis 2019).[2]

---

[1] Because the unknown father did not appear after being served by publication, the district court terminated his parental rights following a default hearing.  There is no issue in this appeal regarding that ruling.

[2] Section 14-2-309(a)(iii) and (v) state:

> (a)     The parent-child legal relationship may be terminated if any one (1) or more of the following facts is established by clear and convincing evidence: . . .
>
> (iii) The child has been abused or neglected by the parent and reasonable efforts by an authorized agency or mental health professional have been unsuccessful in rehabilitating the family or the family has refused rehabilitative treatment, and it is shown that the child's health and safety would be seriously jeopardized by remaining with or returning to the parent; . . .  [or]
>
> (v) The child has been in foster care under the responsibility of the state of Wyoming for fifteen (15) of the most recent twenty-two (22) months, and a showing that the parent is unfit to have custody and control of the child[.]

1

According to the petition, Child was born to Mother and an unknown father in June 2018. At the time of his birth, Child tested positive for methamphetamine and Mother admitted she was a heavy drug user. Consequently, a physician took protective custody of Child and the State filed a neglect petition against Mother. At a shelter care hearing held two days after his birth, Child was placed in DFS legal custody, where he has remained. DFS developed a case plan which, among other things, required Mother to complete substance abuse treatment, sustain sobriety, and cease criminal activity. Although Mother attended some supervised visits with Child, she never made enough progress on her case plan for DFS to allow her unsupervised visitation.

[¶4] On January 2, 2020, Mother was served with the termination petition and a summons while incarcerated at the Natrona County Detention Center. She did not respond to the petition, and the clerk of the district court entered a default against her on February 27, 2020. The State requested a default hearing, which was set for May 11, 2020.

[¶5] In March 2020, Mother filed a handwritten request that the entry of default against her be set aside, an answer, and a request for the district court to appoint counsel to represent her. Appointed counsel filed a supplemental motion, claiming the default should be set aside for good cause in accordance with Wyoming Rule of Civil Procedure (W.R.C.P.) 55(c). The district court combined the hearing on Mother's motion to set aside the entry of default with the previously set default hearing.

[¶6] Mother agreed to the district court's plan to hold the combined hearing by video conference rather than in person because of the COVID-19 pandemic. She later filed a motion to continue the evidentiary default hearing, stating she mistakenly believed the setting for the video conference hearing pertained only to her motion to set aside the entry of default, not the evidentiary hearing. Mother, who was still incarcerated, claimed conducting the evidentiary hearing by video, rather than in person, would violate her right to due process. Specifically, she asserted a video conference would deprive her of the ability to effectively cross-examine the State's witnesses and make it impossible for her to communicate with counsel during the hearing. Mother also argued a continuance was necessary to allow her to present evidence of Child's best interests even though she was in default.

[¶7] The district court began the May 11, 2020, hearing by considering Mother's motion to set aside the entry of default under W.R.C.P. 55(c). It denied the motion, concluding Mother had not established good cause to justify setting aside the entry of default. The court turned next to Mother's motion to continue the evidentiary default hearing. It denied the motion to continue and limited Mother's participation at the default hearing to giving an opening statement (which she waived), cross-examining the State's witnesses, objecting to the State's evidence, and making a closing argument. She was not allowed to present her own evidence.

[¶8]   During the evidentiary default hearing, the State presented only one witness, the DFS caseworker who worked to reunite Mother and Child.  The caseworker testified about the statutory grounds for termination of Mother's parental rights and Child's best interests.  At the conclusion of the hearing, the district court granted the State's petition to terminate Mother's parental rights to Child.  It ruled the State had proven by clear and convincing evidence the statutory bases for termination under § 14-2-309(a)(iii) and (v) and it was in Child's best interests to terminate Mother's parental rights.  Mother filed a timely notice of appeal.

## DISCUSSION

[¶9]   Mother claims the district court violated her right to due process by holding the evidentiary default hearing through video conference rather than in person and by not giving her a meaningful chance to be heard regarding Child's best interests.   The government may not deprive any person of "life, liberty, or property, without due process of law."  U.S. Const. amends. V; XIV, § 1.  *See also,* Wyo. Const. art. 1, § 6.  "The liberty of a parent to the care, custody and control of [her] child is a fundamental right that resides first in the parent."  Wyo. Stat. Ann. § 14-2-206(a) (LexisNexis 2019).  *See also, RA v. State (In re AA),* 2021 WY 18, ¶ 11, 479 P.3d 1252, 1256 (Wyo. 2021) ("[t]he right of familial association is fundamental") (citing *Clark v. Dep't of Family Servs. (In re GGMC),* 2020 WY 50, ¶ 22, 460 P.3d 1138, 1145 (Wyo. 2020); *JLW v. CAB (In re WDW)*, 2010 WY 9, ¶ 17, 224 P.3d 14, 19 (Wyo. 2010); and *TF v. State, Dep't of Family Servs. (In re Adoption of CF),* 2005 WY 118, ¶ 26, 120 P.3d 992, 1002 (Wyo. 2005)).

[¶10] "Procedural due process requires the government to provide a parent with reasonable notice and a meaningful opportunity to be heard before interfering with [her] fundamental right to familial association."  *RA,* ¶ 15, 479 P.3d at 1257 (citing *JA v. State, Dep't of Family Servs. (In re DSB),* 2008 WY 15, ¶ 27, 176 P.3d 633, 639 (Wyo. 2008); *DH v. Dep't of Family Servs. (In re "H" Children),* 2003 WY 155, ¶ 38, 79 P.3d 997, 1008 (Wyo. 2003)).  The required process varies depending upon "the nature of the proceeding and the interests involved."  *KC v. State (In re GC),* 2015 WY 73, ¶ 32, 351 P.3d 236, 245 (Wyo. 2015).  "The question of whether an individual was afforded due process is one of law subject to de novo review."  *RA,* ¶ 9, 479 P.3d at 1256 (citing *ST v. State (In re DT),* 2017 WY 36, ¶ 23, 391 P.3d 1136, 1143 (Wyo. 2017); and *Verheydt v. Verheydt,* 2013 WY 25, ¶ 20, 295 P.3d 1245, 1250 (Wyo. 2013)).

### *Default Hearing by Video Conference*

[¶11] Although her argument is not completely clear, Mother indicates the video conference was insufficient to protect her due process right to be heard because she was unable to effectively cross-examine the DFS caseworker and could not communicate with her attorney during the hearing.  Mother frames the issue as one of due process; however, the bulk of her argument is based upon the right of confrontation under the Sixth

Amendment to the United States Constitution. The relevant portion of the Sixth Amendment states: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. As Mother explains, we have recognized "a defendant's inability to meaningfully cross-examine a witness may violate his right of confrontation." *Tamblyn v. State,* 2020 WY 76, ¶ 50, 465 P.3d 440, 453 (Wyo. 2020) (citing *In Interest of CB*, 749 P.2d 267, 271 (Wyo. 1988)). She also quotes the following passage from *Bush v. State,* 2008 WY 108, ¶ 49, 193 P.3d 203, 214-15 (Wyo. 2008):

> The Sixth Amendment protects the right of an accused to confront the witnesses against him. Generally, this means witnesses who testify against a defendant in a criminal proceeding must appear at trial. The right, however, is not absolute and may be compromised under limited circumstances. . . . Accordingly, the presentation of witness testimony by video teleconference is not permissible unless: 1) it is necessary to further an important public policy, and 2) the reliability of the testimony is otherwise assured.

(Citation omitted).

[¶12] Mother's argument regarding the Sixth Amendment's Confrontation Clause is misguided. Under the clear language of the Confrontation Clause, *criminal* defendants are afforded the right to confront the witnesses against them. *See also, Maryland v. Craig,* 497 U.S. 836, 844, 110 S.Ct. 3157, 3162-63, 111 L.Ed.2d 666 (1990) (reiterating the right to confrontation belongs to criminal defendants); *Bush,* ¶ 49, 193 P.3d at 214 (generally "witnesses who testify against a defendant in a criminal proceeding must appear at trial"). A proceeding to terminate parental rights is not a criminal action. *CLB v. State, Dep't of Family Servs. (In re HLL),* 2016 WY 43, ¶ 23, 372 P.3d 185, 190 (Wyo. 2016) ("We are here involved with a civil matter—namely, the termination of parental rights and this litigation may not be interpreted as a 'criminal case[.]'" (quoting *LP v. Natrona Cnty. Dep't of Pub. Assistance & Soc. Servs. (In re GP),* 679 P.2d 976, 985 (Wyo. 1984) (some quotation marks omitted)). Therefore, the Confrontation Clause does not apply in this case.

[¶13] Other than her Confrontation Clause claim, Mother provides no cogent argument or citation to pertinent legal authority establishing the district court violated her right to due process by conducting the termination hearing by video conference. We could, therefore, decline to consider the matter. *See Willey v. Willey,* 2016 WY 116, ¶ 30, 385 P.3d 290, 299-300 (Wyo. 2016) ("'We need not consider issues which are not supported by proper citation of authority and cogent argument or which are not clearly defined.'") (quoting *Hamburg v. Heilbrun*, 889 P.2d 967, 968 (Wyo. 1995)). Nevertheless, we will address the adequacy of the video conference procedure but note such review is difficult because we must anticipate the arguments Mother might have made, but did not.

4

[¶14]   In *FH v. State (In re ECH),* 2018 WY 83, ¶ 46, 423 P.3d 295, 308 (Wyo. 2018), we stated a "majority of states have held that the extent of an incarcerated parent's right to be present at a termination hearing should be determined in the discretion of the trial court while finding that representation by counsel and the opportunity to appear [in some form] are the two key components[.]" *Id.* (citations and quotation marks omitted) (brackets in original). *In re ECH* clearly indicates an incarcerated parent's due process right to be heard may be protected by allowing appearance at termination hearings by some means other than in person. *See also, In re Child of Raul R.,* 209 A.3d 757, 761-62 (Me. 2019) (allowing participation by an incarcerated parent at a termination hearing "in person, by telephone or video, through deposition, or by other means that will reasonably ensure an opportunity for the parent to be meaningfully involved in the hearing" (citation omitted)); *In re Hill,* No. 349583, 2020 WL 506685, *2 (Mich. Ct. App. 2020) (unpublished) (the court did not violate the incarcerated father's due process rights when it required him to appear at the termination hearing by telephone rather than in person or by video); *State v. W.V. (In re LV),* 482 N.W.2d 250, 259 (Neb. 1992) (incarcerated parent's participation in termination hearing by telephone satisfied due process); *Latham v. State (In re KNL),* 154 P.3d 1276, 1280 (Okla. Civ. App. 2007) (telephone and video technology allow incarcerated parents to actively participate in termination trials).

[¶15]   We recognize that most cases concerning an incarcerated parent's right to appear at a termination of parental rights hearing involve the parent appearing remotely, while defense counsel is in the courtroom. *See, e.g., In re ECH,* ¶ 42, 423 P.3d at 307 (the incarcerated parent appeared by telephone, while his attorney was in the courtroom); *In re Hill,* 2020 WL 506685, *2 (the incarcerated parent appeared by telephone at the hearing, and defense counsel was present in the courtroom); *In re KNL,* 154 P.3d at 1279-80 (parent, who was incarcerated in another state, testified by deposition and court-appointed counsel represented him personally at the trial). Here, the COVID 19 pandemic resulted in the hearing participants, including Mother's counsel, appearing separately by video. We will, therefore, determine whether the district court violated Mother's due process rights by conducting the hearing entirely through video conference rather than in person.

[¶16] The United States Supreme Court set out the test for determining whether a particular procedure violates the litigant's due process rights in *Mathews v. Eldridge*, 424 U.S. 319, 334-35, 96 S.Ct. 893, 902-03, 47 L.Ed.2d 18 (1976). *See BSC v. Natrona Cnty. Dep't of Family Servs. (In re CC),* 2004 WY 167, ¶ 17, 102 P.3d 890, 895 (Wyo. 2004) (when there is no precedent mandating a certain procedure, "the factors identified in [*Mathews*] must be evaluated in determining whether due process [was given] in a particular case"). Under the *Mathews* test, we balance several factors to determine whether the litigant received due process: "(1) the nature of 'the private interest . . . affected,' (2) the comparative 'risk' of an 'erroneous deprivation' of that interest with and without 'additional or substitute procedural safeguards,' and (3) the nature and magnitude of any countervailing interest in not providing 'additional or substitute procedural

5

requirement[s].'" *Turner v. Rogers,* 564 U.S. 431, 444-45, 131 S.Ct. 2507, 2517-18, 180 L.Ed.2d 452 (2011) (quoting *Mathews,* 424 U.S. at 335, 96 S.Ct. at 903). Stated more plainly, "[t]hree elements should be taken into account: 'the private interests at stake, the government's interest, and the risk that the procedures used will lead to erroneous decisions.'" *In re CC,* ¶ 17, 102 P.3d at 895 (quoting *Lassiter v. Dep't of Social Servs. of Durham Cnty., N.C.,* 452 U.S. 18, 26, 101 S.Ct. 2153, 2159, 68 L.Ed.2d 640 (1981)). *See also, State, Dep't of Family Servs. v. Currier,* 2013 WY 16, ¶ 13, 295 P.3d 837, 840-41 (Wyo. 2013) (quoting *Turner* and *Mathews*); *JJF v. State,* 2006 WY 41, ¶ 10, 132 P.3d 170, 174 (Wyo. 2006) (separating the *Mathews* test into four factors: "(1) the private interest affected by the official action; (2) the risk of the erroneous deprivation of such interest through the procedures used; (3) the probable value of any alternative procedures; and (4) the government's interest"). The overall goal of the *Mathews* test is to determine "what specific safeguards the Constitution's Due Process Clause requires in order to make a civil proceeding fundamentally fair." *Currier,* ¶ 13, 295 P.3d at 840-41 (citation omitted).

[¶17] Starting with the first factor – the private interests at stake – the United States Supreme Court has ruled parents have a strong personal stake in termination of parental rights actions because they risk suffering "a unique kind of deprivation." *Lassiter,* 452 U.S. at 27, 101 S.Ct. at 2160. *See also, Santosky v. Kramer,* 455 U.S. 745, 758-59, 102 S.Ct. 1388, 1397, 71 L.Ed.2d 599 (1982) (citing *Lassiter* regarding the strength of the parent's interest in a termination proceeding); *In re CC,* ¶ 18, 102 P.3d at 895 (same). "A parent's interest in the accuracy and justice of the decision to terminate his or her parental status is, therefore[,] a commanding one." *Lassiter,* 452 U.S. at 27, 101 S.Ct. at 2160 (footnote omitted). The parent, however, is not the only party with a private interest at stake in a termination case. The child also has a significant interest in the accuracy and justice of the decision, and in the timeliness of a decision. *See generally, CL v. Wyo. Dep't of Family Servs. (In re AD),* 2007 WY 23, ¶¶ 31-32, 151 P.3d 1102, 1109-10 (Wyo. 2007) (children have the right to obtain stability and permanency in their family relationships within a reasonable amount of time). Although the *JFF* iteration of the *Mathews* factors does not specifically include the nature and magnitude of any countervailing interests (the third *Mathews* factor), we will address Child's interest in conjunction with the government's interest, below.

[¶18] Next, we consider the comparative risk of an erroneous deprivation of Mother's familial interest both with and without additional or substitute procedural safeguards. *Turner,* 564 U.S. at 444-45, 131 S.Ct. at 2517-18; *Mathews,* 424 U.S. at 335, 96 S.Ct. at 903. Mother suggests the video conference procedure deprived her of the ability to effectively cross-examine the State's witnesses and made it impossible for her to communicate with defense counsel during the hearing. In support of her motion to continue the termination hearing until it could be conducted in person, Mother stated it was "impractical" to present documents to impeach the State's witness "over a video." The district court refuted Mother's contention, stating a video hearing "is even a better option than a telephonic hearing where we can all see and hear each other." It pointed out the

video conference technology made it possible to share documents with the hearing participants, and, in any event, the parties had not identified any exhibits they intended to use at the hearing. *Cf. Adoption by Jessica M.,* 239 A.3d 633, 642-43 (Me. 2020) (incarcerated father, who appeared by telephone, was not denied due process by the court's refusal to grant a continuance to allow him to arrange to appear by video). The record clearly shows Mother's attorney conducted an extensive cross-examination of the State's only witness, the DFS caseworker, during the hearing. Mother failed to identify, either at the trial or on appeal, any specific problems she had with cross-examining the caseworker.

[¶19] There is also nothing in the record showing Mother was denied the opportunity to communicate with defense counsel. Although Mother and her counsel never asked the district court for the opportunity to speak privately during the hearing, they could have requested a recess to communicate with one another. *See, e.g.*, *Adoption of Jessica M.,* 239 A.3d at 643 (court permitted recesses at a termination hearing to allow a father, who appeared by telephone, to consult privately with his attorney); *In re Hill,* 2020 WL 506685, *2 (the court permitted "defense counsel to confer with [the incarcerated parent] regarding any matters that arose during the proceedings in private"). Furthermore, the record indicates the video hearing was held using the Microsoft Teams platform, which allows participants to "chat" in private during a video conference. Under these circumstances, there is no evidence the video conference procedure heightened the risk Mother would be erroneously deprived of her fundamental right to associate with Child or that an in-person hearing would have made an erroneous decision less likely.

[¶20] Finally, we consider the countervailing interests. "[T]he government has 'an urgent interest in the welfare of the child, [and, therefore,] shares the parent's interest in an accurate and just decision.'" *In re CC,* ¶ 18, 102 P.3d at 895 (quoting *Lassiter,* 452 U.S. at 27, 101 S.Ct. at 2160). The State also seeks an economical and timely resolution of the matter. *Lassiter,* 452 U.S. at 28, 101 S.Ct. at 2160-61. *See also, Davis v. Page,* 714 F.2d 512, 516 (5th Cir. 1983) ("The state desires an accurate and just decision that can be made as economically and as efficiently as possible."). Delaying the hearing would certainly require the expenditure of additional resources, although we recognize that, compared to the relative enormity of the parent's potential loss, the economic hardship is *de minimus.* *Lassiter,* 452 U.S. at 28, 101 S.Ct. at 2160-61 (delayed proceedings increase the total costs of a termination decision, but the State's pecuniary interest is "hardly significant enough to overcome private interests as important as those here").

[¶21] Of greater importance is the passage of time. Due to the uncertainties associated with the COVID 19 pandemic and Mother's continued incarceration, it was unknown at the time of the hearing how long it would be before an in-person termination hearing could be held, if one could be held at all. It was, however, certain a continuance would result in a delay in a permanency decision for Child. *See In re AH,* 950 N.W.2d 27, 38 (Iowa Ct. App. 2020) (continuance of a termination hearing during the COVID 19 pandemic until it could be held in person would result in an indeterminable delay). Child had spent his entire

life, nearly two years, in DFS custody having minimal interaction with Mother. Child clearly had a significant interest in an accurate, just, prompt and final permanency decision. The State similarly had a significant interest in a prompt and final permanency decision for Child. *See SD v. Carbon Cnty. Dep't of Family Servs. (In re SED),* 2002 WY 168, ¶ 27, 57 P.3d 1235, 1241 (Wyo. 2002) ("'When the rights of a parent and the rights of a child are on a collision course, the rights of the parent must yield.'" (quoting *Matter of MLM*, 682 P.2d 982, 990 (Wyo. 1984)). *See also, In re Hill,* 2020 WL 506685, *2 (incarcerated parent's "interest in being physically present or participating by video conference [at the termination hearing] does not outweigh the state's strong interest in adjudicating child protective proceedings in a timely and efficient manner"). "[C]hildren have a right to stability and permanency in their family relationships." *In re AD,* ¶ 31, 151 P.3d at 1109.

[¶22] Based on the record before us, without the benefit of any cogent argument otherwise, we conclude Mother's due process rights were not violated when the district court held the default evidentiary hearing by video conference, rather than in person. Although Mother's interest in associating with Child was strong, there was no greater risk her interest would be erroneously deprived through a video hearing than an in-person hearing. The State had a weighty interest in achieving permanency for Child in a timely manner, and Child had a weighty interest in an accurate, just and timely decision. On balance, these factors support the district court's use of a video hearing in this case.

### *Meaningful Opportunity to be Heard Regarding Child's Best Interests*

[¶23] In *Niland v. State, Dep't of Family Servs. (In re NRAE),* 2020 WY 121, ¶ 14, 472 P.3d 374, 378 (Wyo. 2020), we described a two-step process for severing the parent-child relationship.

> First, [the State] must establish [the statutory] grounds for termination by clear and convincing evidence. Wyo. Stat. Ann. § 14-2-309(a). Next, if the Department establishes grounds for termination, the court must determine whether termination of parental rights is in the best interests of the child. The requirement to consider the best interests of the child arises from case law. The district court is required to hold a hearing on a termination of parental rights petition. . . . Both statutory grounds for termination and the child's best interests are essential findings and must be examined by the court.

*Id.* (some citations omitted). *See also, BA v. Laramie Cnty. Dep't of Family Servs. (In re FM)*, 2007 WY 128, ¶ 22, 163 P.3d 844, 850 (Wyo. 2007) ("the determination of the child's best interests comes into play only after statutory grounds for termination of parental rights have been established by clear and convincing evidence"). The district court is not, however, required to hold separate hearings on each step. *In re NRAE*, ¶ 15, 472 P.3d at

378. "There is no reason that the best interests inquiry cannot be part of the same hearing where the court considers the statutory grounds for termination." *Id.*

[¶24]  Mother acknowledges that, because she was in default, it was appropriate for the district court to restrict her participation when the State presented evidence on the statutory grounds for termination.  However, she argues the district court violated her due process right to be heard by refusing to allow her to present evidence on Child's best interests.  She claims the divorce case of *Linch v. Linch,* 2015 WY 141, 361 P.3d 308 (Wyo. 2015), supports her view.

[¶25]  In *Linch,* ¶ 4, 361 P.3d at 310, the husband filed a divorce complaint against the wife.  When the wife failed to answer, the husband sought and obtained an entry of default. *Id.,* ¶¶ 4-6, 361 P.3d at 310.  Thereafter, he presented to the district court a form of divorce decree, which the court entered without first holding a default hearing. *Id.,* ¶¶ 6, 35, 361 P.3d at 310, 317.  Several years later, the wife filed a motion to set aside the decree, claiming, *inter alia,* the judgment was void because the district court did not hold a default hearing and make findings regarding the grounds for divorce and the disposition of marital property. *Id.,* ¶¶ 16, 30-35, 361 P.3d at 313, 316-17.

[¶26]  We concluded the district court should have held a default hearing, but the error did not render the judgment void. *Id.,* ¶ 35, 361 P.3d at 317.  In so ruling, we distinguished between an entry of default and a default judgment. *Id.,* ¶ 33, 361 P.3d at 316-17.  "'Entry of default is normally a clerical act which may be performed by the clerk of court, and it does not constitute a judgment.'" *Id.*, ¶ 33, 361 P.3d at 316 (quoting *Spitzer v. Spitzer,* 777 P.2d 587, 592 (Wyo. 1989)).  The entry of default against a defendant or respondent forecloses any further defense or assertion with respect to liability. *Id.*  While "'the entry of default generally establishes the fact of liability according to the complaint, it does not establish either the amount or the degree of relief.'" *Id.* (quoting *Spitzer,* 777 P.2d at 592).  "'[T]he court abuses its discretion by simply entering a form of judgment tendered by one of the parties'" without obtaining the necessary information to determine the proper relief. *Id.,* ¶ 34, 361 P.3d at 317 (quoting *Spitzer,* 777 P.2d at 593).

[¶27]  The salient holding of *Linch* is the district court cannot enter a form of judgment provided by the non-defaulting party in a divorce action without holding a default hearing to determine the proper relief.  There was no child custody issue in *Linch*, and nothing in that decision indicates the district court must allow defaulting parties the opportunity to present evidence on the best interests of the children when custody is at issue.

[¶28]  *Brush v. Davis,* 2013 WY 161, 315 P.3d 648 (Wyo. 2013), is more to the point.  During a default hearing on the father's petition to modify custody of the parties' children, the district court allowed the defaulting mother to cross-examine the father's witnesses and make a closing statement concerning the child's best interests, but it did not allow her to present her own evidence. *Id.,* ¶ 23, 315 P.3d at 654-55 ("'The clear import of [Rule

9

55(b)(2)] . . . is to require the district court to base its findings of fact regarding property distribution, child custody, visitation, and support on some evidence in the record. An entry of default prevents the defaulted party from appearing and presenting evidence; it does not relieve the non-defaulting party of its obligation to produce an evidentiary basis for the desired relief, nor does it relieve the district court of its obligation to base its findings of fact upon such evidence.'" (quoting *Noonan v. Noonan,* 2005 WY 145, ¶ 7, 122 P.3d 964, 965-66 (Wyo. 2005) (other citation omitted)). We ruled the district court's procedure was consistent with our precedent and gave the mother "the process she was due." *Id.,* ¶ 23, 315 P.3d at 655.

[¶29] The district court in the present case did not enter the State's proposed termination order without a default hearing. It required the State to present evidence on the statutory grounds for termination of Mother's parental rights and the best interests of Child. The court permitted Mother to participate in the default hearing by making an opening statement (which she waived), cross-examining the State's witnesses, objecting to the State's evidence, and making a closing argument. *C.f. In re NRAE,* ¶ 19, 472 P.3d at 379 ("The termination of [the father's] parental rights [on summary judgment] before he had the opportunity to respond to [DFS's] motion to present evidence or to examine, explain, or rebut evidence on NRAE's best interests was a denial of fundamental fairness guaranteed by Wyoming law.") (quotation marks and citations omitted). That is all the process *Linch* and *Brush* require.

[¶30] *Linch* and *Brush* were divorce/custody cases, not termination of parental rights cases. We have not specifically addressed whether a defaulting parent should be allowed to present evidence on the child's best interests during a default hearing in a termination action. In *DMM v. State, Dep't of Family Servs. (In re ZMETS),* 2012 WY 68, 276 P.3d 392 (Wyo. 2012), we ruled the district court was required to hold a hearing on the termination petition, even though the mother was in default. *Id.*, ¶ 11, 276 P.3d at 395 (citing Wyo. Stat. Ann. § 14-2-312 ("When a petition is filed and presented to the judge, the judge shall set the petition for hearing.")). Regarding the defaulting mother's right to participate at the default hearing, we stated:

> Although the district court denied the motion to set aside the entry of default, the court allowed Appellant to participate at the hearing through counsel. Counsel for Appellant was invited to make an opening statement, and was permitted to cross-examine the Department's witness, object to evidence, and make closing arguments. Appellant was not permitted to testify or call witnesses on her behalf. No party objected to that procedure, and Appellant does not challenge that procedure in this appeal.

10

*Id.,* ¶ 12, 276 P.3d at 395.  We observed "[t]he procedure used by the district court is consistent with the procedure we have previously approved in civil cases" where determination of the relief or damages was required.  *Id.,* ¶ 14, 276 P.3d at 395-96.  However, it was unnecessary to "consider whether this is the proper procedure in an action terminating parental rights" because the issue was not before us.  *Id.,* ¶ 14 n.3, 276 P.3d at 396 n.3.

[¶31]  In *In re HLL,* ¶¶ 25, 27-28, 372 P.3d at 190-91, we stated "with the appropriate notice, default can be entered against a non-appearing parent" in a termination action, but the State is still required to present clear and convincing evidence of a basis for termination under § 14-2-309(a) at the default hearing.  We continued:

> If the defaulting parent does appear at the termination hearing, the district court has broad discretion in determining the extent to which the parent can participate. For example, in *ZMETS,* the parent was not permitted to present evidence, but was allowed to cross-examine the Department's witness, object to the entry of evidence, and present opening and closing statements. *In re ZMETS,* ¶ 7, 276 P.3d at 394. *ZMETS* did not, however, set a limit on the extent of participation a defaulting parent could properly be permitted in the exercise of judicial discretion. In the instant case, Mother does not directly challenge the district court's ruling in this regard, and so we must leave this issue for another case in which it is raised and fully briefed by the parties.

*Id.,* ¶ 28 n.6, 372 P.3d at 191 n.6.

[¶32]  *In re HLL* clearly gives district courts discretion to allow defaulting parents greater participation at default hearings in termination actions.  However, Mother makes no argument the district court abused its discretion by limiting her participation at the default hearing.  She also does not provide any authority supporting her view that due process requires greater participation by the defaulting parent in a termination of parental rights case.  As stated above, we do not ordinarily consider issues which are not supported by proper citation of authority and cogent argument.  *Willey,* ¶ 30, 385 P.3d at 299-300; *Hamburg*, 889 P.2d at 968.

[¶33]  Nevertheless, we will address the default procedure used by the district court under the factors set out in *Mathews.*  Again, Mother has a strong interest in preserving the family relationship.  As to the second factor, there is nothing in the record showing Mother's comparative risk of losing her parental rights was increased by the district court's refusal to allow her to provide evidence on Child's best interests.  The district court required the State to provide clear and convincing evidence of the statutory bases for termination of

Mother's parental rights. The State complied by providing proof of two grounds for termination of Mother's parental rights. First, it showed Mother had neglected Child, DFS's reasonable efforts to rehabilitate the family were unsuccessful, and Child's health and safety would be seriously jeopardized by returning him to Mother's custody. Section 14-2-309(a)(iii). Second, it proved Child had been in foster care under DFS responsibility for fifteen of the most recent twenty-two months and Mother was unfit to have custody and control of Child. Section 14-2-309(a)(v). The State was also required to demonstrate it was in Child's best interests to terminate Mother's parental rights. Mother was given the opportunity to make an opening statement, cross-examine the State's witness, object to the State's evidence, and provide a closing argument that the State had not satisfied its burden.[3]

[¶34]   Furthermore, a "party claiming an infringement of [her] right to due process has the burden of demonstrating both that [she] has a protected interest *and that such interest has been affected in an impermissible way*." *Brush*, ¶ 16, 315 P.3d at 653 (citation omitted) (emphasis added). Mother did not make an offer of proof outlining the evidence she would have presented concerning Child's best interests had the district court allowed it; nor, does she provide that information on appeal. Thus, we have no way to determine whether permitting her to present such evidence would have reduced the risk of an erroneous deprivation of her parental rights. *See Rush v. Golkowski,* 2021 WY 27, ¶ 34, 480 P.3d 1174, 1182 (Wyo. 2021) ("'Because Father did not make an offer of proof to establish the relevance of the child's testimony to the motions hearing, we have no way to gauge its admissibility or any prejudice that may have resulted from its exclusion.'" (quoting *Fleet v. Guyette*, 2020 WY 78, ¶ 29, 466 P.3d 812, 821 (Wyo. 2020)); *In re Child of Raul R.,* 209 A.3d at 762 (mother, who complained she was not present on the first day of a termination of parental rights hearing because she was arrested on the way to the hearing, did not make an offer of proof explaining how her participation would have affected the trial court's determination of her parental fitness).

[¶35]   Regarding the third factor of the *Mathews* test, as discussed above, both Child and the State had a strong interest in a prompt resolution of the termination issue. At the default hearing, Mother did not indicate she had or could obtain evidence of Child's best interests. Continuance of the hearing would have delayed permanency for Child and, considering Mother failed to provide any information about the evidence she would have presented concerning Child's bests interests, it is impossible to gauge how long the delay would be,

---

[3] Mother is critical of the meagerness of the State's evidence on the best interests of Child. She does not, however, raise an independent issue challenging the sufficiency of the evidence, nor does she analyze the hearing evidence in accordance with our standard for reviewing the sufficiency of the evidence. *See, e.g., In re ZMETS,* ¶ 8, 276 P.3d at 394-95 (citing *RLA v. State, Dep't of Family Servs. (In re LA),* 2009 WY 109, ¶ 12, 215 P.3d 266, 268 (Wyo. 2009); *ML v. Laramie Cnty. Dep't of Family Servs. (In re LL),* 2007 WY 92, ¶ 9, 159 P.3d 499, 501 (Wyo. 2007) (setting out the standard for reviewing sufficiency of the evidence in a parental rights termination action). We will not, therefore, analyze the sufficiency of the evidence to support the district court's conclusion it was in Child's best interests to terminate Mother's parental rights.

or if any such evidence would ever exist. The State was justly intent upon moving forward with the hearing so it could provide a permanent home for Child, who had never had one.

[¶36] Balancing the *Mathews* factors, it is clear Mother received adequate process under the circumstances of this case even though she was not permitted to present evidence on Child's best interests. Mother, Child, and the State each had important interests at stake in the termination action, but the deciding factor is the comparative value of providing Mother the opportunity to present best interests evidence. The record does not support a conclusion that Mother incurred a greater risk of an erroneous deprivation of her constitutional right to associate with Child because the district court did not allow her to present evidence on Child's best interests.

## CONCLUSION

[¶37] Mother has failed to establish her due process rights were violated when the district court held the default hearing on the State's petition to terminate her parental rights by video conference or when it limited her participation at the hearing.

[¶38] Affirmed.

**DAVIS, Chief Justice,** specially concurring, in which **FOX, Justice**, joins.

[¶39]  I concur in the majority opinion, and I have no disagreement with the reasoning contained in it.  I write separately to address what I believe based on rulings and briefing to be a misunderstanding on the part of the bench and bar as to the significance of *In re ZMETS*, 2012 WY 68, 276 P.3d 392 (Wyo. 2012).  It has apparently come to be viewed as either a standard or a safe harbor in cases of defaulting parents in termination of parental rights and custody cases.  I believe the case provides neither.[4]

[¶40]  In *ZMETS*, the mother failed to file a timely answer.  "Due to the default, [mother] was not permitted to present evidence, but she was allowed to cross-examine the Department's witness, object to the entry of evidence, and present opening statements and closing arguments."  *In re ZMETS*, ¶ 7, 276 P.3d at 394.  Neither party objected to this procedure, and the appellant did not challenge it on appeal.  *Id*. ¶ 12, 276 P.3d at 395.  We upheld the district court's exercise of discretion, but we did not address whether this procedure violated mother's due process rights or whether it was an appropriate procedure in an action terminating parental rights because no one challenged it.  *Id*. ¶ 14 n.3, 276 P.3d at 396 n.3.

[¶41]  We followed *ZMETS* in *In re HLL*, 2016 WY 43, 372 P.3d 185 (Wyo. 2016), in which we held that "a default judgment that terminates the rights of the parent cannot be entered by the district court without (1) holding the required hearing and (2) the Department presenting clear and convincing evidence of the grounds to terminate the parental rights, all in accordance with §§ 14-2-308 *et seq*."  *Id.* ¶ 29, 372 P.3d at 191.  We noted that "depending on the type of civil case before it, the court has discretion to hold an evidentiary hearing, and in some circumstances it may even have to hold a jury trial if the applicable statute so requires."  *Id.* ¶ 26, 372 P.3d at 191.

[¶42]  Relying on *ZMETS*, we emphasized that when a parent has defaulted, "the district court has broad discretion in determining the extent to which the parent can participate."  *Id.* ¶ 28 n.6, 372 P.3d at 191 n.6.  Once again, we did not rule on whether the procedure used by the district court—limiting mother's participation to an opening statement, cross-examining the Department's witnesses, making objections, and delivering a closing argument—constituted an abuse of discretion because the issue was not raised and fully briefed by the parties.  *Id.*; *see also In re E.R.C.K.*, 2013 WY 160, ¶ 10 n.5, 314 P.3d 1170, 1173 n.5 (Wyo. 2013) (noting the procedure used in *ZMETS* was not objected to or challenged on appeal).

---

[4] The following discussion assumes that there are no grounds to lift a default entirely, which is an issue governed by another body of law and which involves decisions we also review for an abuse of discretion. *See, e.g., Rush v. Golkowski*, 2021 WY 27, ¶ 19, 480 P.3d 1174, 1178 (Wyo. 2021)

[¶43] Unfortunately, in my view, *ZMETS* has come to be viewed as what it was never intended to be and is not by its express language—a case endorsing a procedure to be utilized whenever a parent defaults, or at least one providing a safe harbor from reversal when it is used. It is true that we generally recognize that "[o]nce default has been entered, the party in default is precluded from making any defense or assertion with respect to liability or an asserted claim." *Peak v. Peak*, 2016 WY 109, ¶ 8, 383 P.3d 1084, 1088 (Wyo. 2016); *see also Rosty v. Skaj*, 2012 WY 28, ¶ 20, 272 P.3d 947, 954 (Wyo. 2012). However, we have also recognized that "[w]hile default judgments are appropriate in some instances involving child custody and visitation, the best interests of the child may not necessarily be served by the strictest application of the default provisions." *Esquibel v. Esquibel*, 917 P.2d 1150, 1152 (Wyo. 1996).

[¶44] We of course do and should afford the district court broad discretion in dealing with defaults in termination and other cases, but we must remember the context in which that discretion must be exercised in a case affecting parental rights. Those decisions at trial must still be reviewed individually on appeal to determine whether there was a legitimate basis in a particular case to limit a defaulting parent's participation as was done in *ZMETS*, and whether all parties' rights were protected, including the rights of the child whose relationship with his or her parent may be terminated or altered. *In re HLL*, ¶¶ 26-29, 372 P.3d at 191; *Santosky v. Kramer*, 455 U.S. 745, 760-61, 102 S. Ct. 1388, 1398, 71 L. Ed. 2d 599 (1982) ("[T]he child and his parents share a vital interest in preventing erroneous termination of their natural relationship. Thus, at the factfinding, the interests of the child and his natural parents coincide to favor use of error-reducing procedures.") (footnote omitted).

[¶45] The ultimate goal in a termination case and in similar proceedings must be to serve the child's best interests, not to punish the defaulting parent.

> Default requests must be approached with particular caution when parental rights are at issue. A court's primary concern in parental rights matters must be the best interests of the child, and resolution of the issues affecting children is accomplished most appropriately if both parents can be heard, unless one parent has evidently abandoned the field.

*Smith v. Rideout*, 1 A.3d 441, 443-44 (Me. 2010); *see also Flynn v. May*, 852 A.2d 963, 976 (Md. App. 2004) ("As sorely tempted as we are to hold flatly that the default judgment procedure . . . is not applicable to child custody disputes, it is not necessary to go so far. We are content to hold that, . . . in the circumstances of this case, [the trial court] abused its discretion when it ordered a change in the primary physical custody of [the child] without permitting witnesses to testify or other evidence to be offered.").

15

[¶46] Defaulting parties are allowed to participate more fully and to testify in other civil cases than was allowed in *ZMETS*. *See Wunsch v. Pickering*, 2011 WY 59, ¶ 30, 249 P.3d 717, 725 (Wyo. 2011) (consistent with our precedent when there are unliquidated damages in civil cases defaulting party could fully participate and submit evidence in the evidentiary proceeding on damages owed); *Schaub v. Wilson*, 969 P.2d 552, 556 (Wyo. 1998) (finding we are unaware of any reason or policy to distinguish a comparative fault situation where a defaulting defendant can still participate when the issue is the apportionment of damages among sequential events); *McGarvin–Moberly Constr. Co. v. Welden*, 897 P.2d 1310, 1317 (Wyo. 1995) (finding that under the comparative negligence statute, for example, where a defendant is only liable for that portion of the damages for which he is at fault, a defaulted defendant must be allowed to defend the fault issue). Other courts have extended this reasoning to termination proceedings.

> Parents have a fundamental interest in the care, custody, and control of their children, which interest is protected by the Due Process Clause of the United States Constitution. *Mara M. v. Ariz. Dep't of Econ. Sec.,* 201 Ariz. 503, 507, ¶ 24, 38 P.3d 41, 45 (App.2002) (citing *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). Thus, "when the State acts to terminate this right, it must provide appropriate fair procedures." *Id.* Mother argues that such fair procedures include having a right to be present and to participate at an evidentiary hearing concerning termination of parental rights, and we agree.
>
> Although not controlling, we again find guidance in established case law concerning the entry of default judgments. Arizona courts have previously held that, even when a default has been entered, a defaulted party has a right to participate in any further proceedings that will culminate in a judgment. For example, in personal injury cases, "[an] entry of default constitutes only a judicial admission of liability and not of the amount of recovery when the claim is unliquidated"; therefore, the trial court should allow a defaulting party to "cross-examine and even present counterproof." *Dungan v. Superior Court,* 20 Ariz.App. 289, 290, 512 P.2d 52, 53 (1973); *see Mayhew v. McDougall,* 16 Ariz.App. 125, 130, 491 P.2d 848, 853 (1971) (holding that a defaulted defendant has the right to contest the issue of damages). Arizona courts have also extended the *Dungan* rule to tax appeals. *See Ariz. Dep't of Revenue v. Superior Court,* 165 Ariz. 47, 50, 796 P.2d 479, 482 (App.1990).

> Considering the above, and in light of a parent's fundamental parenting interest, we hold the entry of default or, more properly stated, a finding of waiver of rights, precludes Mother from affirmatively presenting testimony or other documentary evidence to contest the statutory bases for termination, but the requirement of fair procedures mandates giving Mother the opportunity to remain in the courtroom and participate. That right of participation includes cross-examination of ADES's witnesses and testifying if she so desires as it relates to the issue of the best interests of the children.

*Christy A. v. Arizona Dep't of Econ. Sec.*, 173 P.3d 463, 470 (Ariz. Ct. App. 2007) (footnotes omitted); *see also Brenda D. v. Dep't of Child Safety*, 410 P.3d 419, 428 (Ariz. 2018) ("[T]o avoid serious constitutional issues, we hold that if a parent appears late for a hearing, but at a stage of the proceedings where an opportunity to contest and present evidence still exists, it would be an abuse of the juvenile court's discretion to impose the full-waiver sanctions, including finding a waiver of the parent's right to contest the factual allegations in the motion.") (internal citation omitted); *In re Termination of Parental Rts. to Torrance P.*, 711 N.W.2d 690, 693 (Wis. Ct. App. 2006), *aff'd sub nom. In re Torrance P., Jr.*, 724 N.W.2d 623 (Wis. 2006); *Jones v. Jones*, 591 S.W.3d 831, 834 (Ark. App. 2019) (abuse of discretion when technical failure became primary consideration and best interest of the child was secondary); *Smith*, 1 A.3d at 443-44; *Flynn*, 852 A.2d at 975-76 (children should not be made to suffer because of a parent's procedural breaches and default); *Childers v. Riley*, 823 So. 2d 246, 246-47 (Fla. Dist. Ct. App. 2002) ("[W]hen we are dealing with the question of custody, this Court must have information from all sides in order to render an ultimate decision that will truly be in the best interest of the child. This can never be done if matters are conducted on a default basis with only one side presenting testimony.") (citation omitted).

[¶47] Nothing in this concurrence is intended to suggest that the trial judge should not take into account other factors, including the importance of timely achieving permanency in termination cases, the court's obligation to move cases through its docket without unreasonable delay, and the need to assure that the rights of the non-defaulting party are protected. Balancing all of these factors against achieving a result based on full information is undoubtedly a difficult task, but *ZMETS* does not provide a means to cut that Gordian knot with a mandatory procedure or provide a safe harbor from close review.

[¶48] However, as is the case here and as has been true in other cases that have come before us, there is no way for this Court or the trial judge to determine whether allowing a parent to testify and present evidence would have made a difference because no offer of proof was made, as required under W.R.E. 103(a)(2) (a party is required to make a showing that "a substantial right [was] affected" and "the substance of the evidence was made

17

known to the court by offer or was apparent from the context within which questions were asked."). Without an offer of proof, neither we nor the trial judge have any way of knowing what evidence a defaulting parent might be able to present, and whether it could make a difference. *Fleet v. Guyette*, 2020 WY 78, ¶¶ 28-29, 466 P.3d 812, 821 (Wyo. 2020); *In re LDB*, 2019 WY 127, ¶ 48, 454 P.3d 908, 922 (Wyo. 2019). Assertions and speculation in an appellate brief cannot be a substitute for an explicit offer of proof. *Johnson v. Sikorski*, 2004 WY 137, ¶ 24, 100 P.3d 420, 427 (Wyo. 2004).

[¶49] Making an offer of proof is not difficult. An offer may be made in at least three ways, all of which require prior preparation to determine what evidence is available and whether it can legitimately be argued to be admissible in this context. The most common method is for counsel to simply obtain the trial court's permission to make an offer of proof on the record, and then orally describe what evidence would be presented if it would be allowed. The statement must be definite and specific and not conclusory, and it must describe sufficient facts to demonstrate the admissibility of the evidence, and in this situation, why receiving that evidence is required in the default context given the unique and final nature of decisions terminating or altering the parental relationship. *See, e.g., United States v. Adams*, 271 F.3d 1236, 1242 (10th Cir. 2001); 75 Am. Jur. 2d *Trial* § 365 (2d ed. Feb. 2021 update); 23A C.J.S. *Criminal Procedure and Rights of Accused* § 1694 (Mar. 2021 update).

[¶50] Secondly, the trial court may permit a written offer of proof meeting the above requirements. This can be in the form of an affidavit. Finally, particularly in jury trials, offers of proof can be made by allowing the proposed witness to be questioned under oath out of the presence of the jury. *Silva v. State*, 2012 WY 37, ¶ 20, 271 P.3d 443, 450 (Wyo. 2012) (quoting *Bloomfield v. State*, 2010 WY 97, ¶ 20, 234 P.3d 366, 374 (Wyo. 2010)); *Johnson*, ¶ 24, 100 P.3d at 427.

[¶51] Determining what evidence a defaulting parent should be allowed to present does not lend itself to a mechanical adherence to the process that was used in *ZMETS*. On a proper record, adherence to that procedure could be an abuse of discretion.